I'd like to take a second to thank Judge Tashima who's doing us the honor and the great favor of sitting with us from the Ninth Circuit this week. Thank you. Ms. Bergman, are you ready? Good morning. May it please the Court, my name is Andrea Bergman and I represent Miguel Olhovsky. I'd like to request three minutes of rebuttal time, please. When you asked for Dr. Silverman to testify, that was I guess in a motion? Because at the transcript of the hearing, there's no suggestion that you made the motion again or asked the judge to entertain Judge Silverman's testimony before you proceeded and then you had a report from Judge Silverman. So how did the request for Judge Silverman's testimony, how did that come about? Let me explain. In preparation for the sentencing, I spoke with Dr. Silverman because I knew that he had an ongoing relationship with Mr. Olhovsky. For how long? Two years? It was about 18 months, a year and a half, two years.  He indicated some concerns to me on the phone about the case, about the amount of time that he might be looking at. And I suggested at that time that I would want to review his records, that upon review of those records it might be beneficial to call him as a witness at the sentencing. And he agreed to do that in the phone conversations. Subsequently, the pretrial services officer, the chief pretrial services officer in the District of New Jersey, called a status conference with the court. And it was at November 16th date and it's that hearing ultimately that the district court was able to address the issue because at that juncture, pretrial was taking the position that Dr. Silverman could not testify or otherwise there would be a breach of contract. And there were several other reasons provided for their desire not to have him testify. Okay, did you elaborate about it? We have a copy of the contract that was sent in tonight. Excuse me. Correct. Let's do it. I'll ask maybe you folks can help me out, but I couldn't find anything in there. It's really very quick. It's a pretty lengthy document. I couldn't find anything in there that would preclude it, but I didn't know what I was looking for either. Correct. In fact, I think that the contract explicitly provides that the offender may be subpoenaed. If you look to page 76 of the record, that is the provision that addresses vendor testimony. The provisions specifically provide that the vendor may appear upon request of the U.S. Attorney. Can you give us some reference to the contract itself, like the page of the contract or the paragraph number of the contract or something like that? Yes. Let's see. In the appendix 76, it's something else. Yes, it is. C-48 of the contract. Yes, page C-48, section on vendor testimony. C? C-48 of the contract, it would be page 76 in the appendix. You mean the one that said vendor testimony? Correct. Okay, go ahead. Now, you requested a subpoena, correct? Well, when it became clear that the judge was inclined to go along with pretrial's recommendation that Dr. Silverman not be permitted to testify, at that point the issue of subpoena came up because they knew that Dr. Silverman, through conversations with pretrial, no longer was going to come voluntarily. Now, the court did permit you to submit additional materials from Dr. Silverman, correct? He did. And you did not do that? Well, we ultimately, after that hearing, did obtain Dr. Silverman's treatment records. I never had any additional conversations with Dr. Silverman because, at that time, calls to Dr. Silverman were no longer answered. And so I wasn't able to supplement even the letter that had been written to the court. Two psychiatrists did send letters, and did they testify also? They testified briefly. We were permitted to put on, during the course of a lunch hour of a trial, short testimony. It was about 10 minutes for each of the doctors. It was truncated. Well, when you say short, are you suggesting that it was less than you needed to put on whatever you were going to put on? Well, I think, at the end of the day, yes. I think that the hearing elapsed. So did you make an objection? I did not. At the end of the day, the bigger objection was the fact that Dr. Silverman wasn't there. I mean, these psychiatrists, to my mind, had pretty favorable things to say vis-à-vis what you would have wanted to adduce, namely that on a certain scale he seemed like a very low risk and clearly went into his background. How were you prejudiced? What would Silverman have said? Because the judge clearly heard this but decided that the punishment under the guidelines of 72 months was appropriate. What would you have elicited from Dr. Silverman that you didn't already have? Well, I think that Dr. Silverman was our best evidence for mitigation because of Dr. Silverman's unique position, having been the only doctor, mental health treating physician, who had treated Mr. Olofsky, won Mr. Olofsky's life. This was it. But what would you have said that wasn't already said? Well, I think that there was a critical issue that was really not answered for the district court, and that is what is Mr. Olofsky's prognosis? We were asking the court to impose a probationary sentence for this young man, and the judge understandably, the district court I think, wanted an answer to why is there not going to be some risk to the community to do this under this type of case. Dr. Silverman, I had hoped and anticipated, would testify about why he was comfortable knowing this young man as long as he knew him, seeing the progress that he had made over the course of time, why he was comfortable making a recommendation that he be treated on an outpatient basis, a condition of probation. I think that was the testimony that was perhaps most critical that was missing. Both of the doctors who testified made a recommendation that Mr. Olofsky could proceed with treatment on an outpatient basis successfully, but I think that the weight of those opinions was frankly not as compelling as it would have been to come from Dr. Silverman. They were relying on Silverman to make their opinions, to reach their opinions, weren't they? They did review Dr. Silverman's records, that's correct. Did either of them individually interview? I guess one of them said he did, because I read their testimony last night. One of them I think said he did actually interview. Yes, I believe one of them spoke on the phone with Dr. Silverman also. Is it an abuse of discretion for a sentencing court to limit testimony at sentencing and to decide exactly what it wants to hear? Well, I think that the contours of the due process clause as applied in that situation, i.e. what processes due at sentencing, depends a lot on what the relevant issues are and what the court has before it to determine all the issues that it needs to determine for purposes of a fair sentence. Under 3553A, we are now in a post-Brooker world where district courts, I think, have an expanded discretion to consider a myriad of factors that perhaps if the guidelines were mandatory, they do not. And that in any given case, it might be necessary in order to comport with a due process right of the defendant when there is a significant issue that a hearing may be what is required. I would certainly... Well, I mean, you know, I think you recognize it's an awfully tough argument you're making in a sentencing concept. In other words, I think what your argument comes down to is Dr. Silverman's testimony would have been weightier. He might have been more persuasive, you know, maybe more gravitas, something like that. But essentially, everything he had to say, the judge knew about. So he had the information. And, you know, in the context of a sentencing before a judge who knows the defendant, sees the defendant, so forth, it's a tough argument, isn't it? Well, I think that in any given case that you can't permit a ruling where the defendant who has put a mental health issue at issue, where a defendant is looking for a probationary sentence instead of a very, very serious 10-year sentence, which was what was recommended under the guidelines, that under those circumstances, that a defendant should be able to put their best evidence forward. And so I think that in this particular case, there was certainly a violation of due process. Whereas in, you know, a different fact scenario, there may not be. That is a tough argument. It doesn't mean it's wrong, but it's tough. But do you have to argue for a due process violation or, as Judge Vendel suggested, are you arguing for an abusive discretion or both? Well, I think that in this instance, when an abusive discretion does infringe upon a due process right, that there's a heightened standard. That's a very good answer. But then you also have to get to the reason of unreasonableness or reasonableness hurdle. Didn't the court really go through what we had to consider and came up with a sentence that was four years lower than the guideline? I disagree. I do not believe that the court's analysis was adequate under 3553A. When this court reviews for abusive discretion on the reasonableness issue, of course, the court has to look at both the procedural aspects as well as the substantive aspects of the sentence. And in this case, I think that the procedural errors really primarily focused on a failure to consider all of the 3553A factors. If you look closely at this record, the judge begins by stating an obligation to conform the sentence of 3553A, names several of the factors, but completely omits the history and characteristics of the defendant. The other difficulty or infirmity that we see in the record here is that the court utterly failed to respond to the non-frivolous arguments that were put forth by the defense. This was not just an issue of Mr. Olavsky being very young. The crux of this argument was not just that he was chronologically a young man, he is, but that he functioned as a 14 or 15-year-old boy. And there is absolute silence in the record that the judge considered that at all. There's also absolute silence in the record that the judge considered our argument that because of his physical infirmity, because of his emotional immaturity, and because of his physical frailty or small statute, that he was likely to be subject to abuse in prison. That is completely silent in the record that the judge did not even consider it. This court has said that the record has to show a true, considered exercise of the discretion, including a recognition of the arguments that are not frivolous, that have been made by the defendant, and an explanation about why the court is rejecting those arguments. I would also note that when you look to the parsimony provision getting to the substantive aspects of the sentence, that there are several comments made by the district court that cause concern. Comments such as that this type of offense calls for draconian punishment, such as we don't know that he's not going to become, again, a pedophile monster, suggesting that Mr. Olowski is a monster. Those kinds of things that suggest that there was unequal weight given to the deterrence, the general ideas that there should be deterrence or retribution, as opposed to a fully individualized review of all the evidence to assess the appropriate sentence. And if I could just finish the thought there, with respect to the actual sentence imposed, yes, agreed, it was 48 months less than the 120 recommended by the guidelines. But keep in mind that this is the sentence that the district court says was the draconian sentence that was needed. What position did the government take vis-a-vis sentencing? They took the position that the 120 months was appropriate. And that's the statutory maximum here? Yes. And is he receiving any kind of mental health counseling in prison? He is seeing a psychologist in the prison. He is not part of the sex offender management program. He's not? Not. Where has he been designated to? He's at the Federal Medical Center in Devons, Massachusetts. Do they have a sex offender program in that prison, do they? They do, I believe. I think that there was some period of time where the Bureau of Prisons did not have the program there. Do you know why he's not in the program? The program is, again, I think that it just came back to Devons. I think that that was the primary reason why. Okay. You do deserve some time, I think. Yes. Thank you. May it please the Court, Eric Hasso on behalf of the United States. Your Honor. Can I pronounce your last name? Hasso. Hasso. So the J is like a Spanish J? It's like Jose. Okay. Exactly. Your Honor, Ms. Bergman's first argument with regard to reasonableness, I believe, relies for a second with regard to whether there was some due process with respect to the right or even error in excluding the psychologist, Dr. Silverman. Forget due process for a second. Let's look at abuse of discretion. I don't think I want to break this. I don't think it's an exaggeration. I was trying to think about this last night. There are certainly thousands, maybe tens of thousands of sentences that are imposed as a state court judge. I couldn't imagine in a case like this where the psychologist who had been, psychologist or psychiatrist, either one, who had been treating the defendant for two years who was willing to testify. I wouldn't rest very easily if I didn't hear what that psychiatrist had to say, especially if I then imposed a six-year sentence. And I understand that the information was there in front of the court, but there's no requirement to assess that judges have to read social science literature. But one case that may well suggest that we ought to do more of it is a case like this where you're concerned about someone becoming a predator, sexual predator. You have information available from a trained professional who's been interviewing and treating this guy for two years. So you just ask the psychologist or psychiatrist, what does the literature say given someone in this situation, their chronological age, their maturity, what does the literature say about the likelihood of them being recidivist? One, if they receive the course of treatment which is noncustodial as opposed to some possible course of treatment which is custodial, are there any studies like that? Because they're out there, they're legion. And the court denies itself that information. It appears, based upon a mistake of fact or a mistake of law, this thing about the contract forbidding it, it looks like the contract requires it. Well, Your Honor, I submit that the record is quite incomplete as to whether the court took into consideration the contract. It was certainly discussed, it was certainly put before the court. The record is quite unclear as to the reasons why, first of all, whether the doctor at the end of the day would have been willing to testify or not. Well, if he was subpoenaed. Oh, yes, of course, Your Honor, yes, indeed. And it seems to me at one point the court is believing he doesn't have the ability to subpoena the doctor to give expert testimony. Well, it's not really expert testimony. Was there a mistake of law by the district court? Well, Your Honor, it appears that the court was thinking of, I believe, Rule 45 in civil context where an expert cannot be, who is not retained by a party, cannot be subpoenaed in a normal court. There are exceptions, of course, to most things. So it was an error of law. I'm not prepared to concede that, Your Honor. Of course you're not. Well, again, Your Honor, I would note— What position did the government take on this? Well, Your Honor, we— On whether or not the doctor could be subpoenaed or could be called. The government took the position that the contract was not clear about whether he could be called or not. Your Honor, the contract notes that it can, as counsel points out, that the vendor shall appear in legal proceedings in response to subpoena, which is what counsel requested. On the other hand, in subsection 5, it says that he may not act as an advocate for the defendant in any legal or administrative proceeding. Because he testifies, you know, pursuant to subpoena, because that's the only way to get him, that doesn't mean he's acting as an advocate. He knows he's employed by pretrial services. Couldn't he be acting, you know, on behalf of pretrial services? Well, that's right, Your Honor, and that goes back to the purpose, as I understand it, of the contract and having consulted with pretrial services in preparing for this. We're arguing it today, and they note that the contract is worded the way it is because it is focused on the retention of vendors to serve, as Your Honor points out, pretrial services, not any party. And they take the position that these vendors, psychologists in this case, or someone in a rehab context. Who do you mean by they? Pretrial services, pardon me, Your Honor. Should not testify as an advocate for either party. For the government saying this is a very bad person who's, you know, irredeemable and should go to prison forever. Why did they sign the contract? You're saying, well, we got this contract, but that doesn't matter because pretrial services takes the position that the people they have under contract shouldn't serve as a witness. It doesn't matter what the contract says. Well, Your Honor, it also says unless the action is approved in writing by the pretrial services officer. Indeed. It doesn't prohibit it. That's correct, Your Honor. Why wouldn't they want all this information to be before the judge? Well, and in this case, going back to what the judge did in this case, he noted that the government raised concerns, going back to Your Honor's question, about whether it was appropriate for someone who is retained, so to speak, as a neutral, and really to ensure compliance with the conditions of pretrial release, not so much to act as an advocate or even to really treat the defendant. But in this case, there was obviously a course of treatment. But the judge in this case, we advocated that it would be inappropriate for him to testify, but, of course, we conceded that the judge potentially could have the discretion to subpoena the defendant, or excuse me, the doctor. But then upon the assurance, there was a brief discussion of the contract, and the judge basically said, well, is this guy willing to testify? And counsel represented at that point, as she noted, he was willing to testify. And I submit that it's unclear whether he was ever unwilling to testify. He at point one point didn't return her phone calls, et cetera. Well, the contract says he shouldn't unless you approve it, so I think we can assume that he needed to be subpoenaed to give him. Well, not necessarily, because what happened in this case is that the judge at the end of the proceeding said, okay, if he's willing to testify, first of all, and I think importantly, Your Honors, that the judge indicated, I'm not sure at that preliminary hearing, I'm not sure if I want to hear from any live witnesses. And I think it's fair to say that that would have been within his discretion, or at least the government would submit that that certainly comports with the existing case law. But there is certainly no due process right to live testimony. My problem was because you're on trial and you're trying to squeeze this in. I'm not sure. They're saying, look, I'm going to rush here. I'm not sure I have the time to hear any witnesses before I decide whether or not to put somebody in prison for 10 years. Are you agreeing that's okay? Well, the question, Your Honor, though, is whether the substance of the doctor's testimony, as Judge Randolph noted, what would he have said differently? Well, he would have said this isn't your run-of-the-mill sex offender. Isn't that exactly what the court has to consider under 3553? He did say that. Is this a run-of-the-mill or is this different? He did say that, Your Honor, in the context of his letter, which was a very powerful letter, which was the letter written that he wrote to pretrial services saying, I've never done this before, I want to do this in this instance. But reading the transcript of the actual imposition of sentence by the district court, I thought I was reading from a different case. There seemed to be a disconnect between the facts of the case and what we have here and what the court said. The court was reading titles of pictures and, I mean, I would have thought there was a 50-year-old hardened criminal. He never acknowledged the fact that this might be a little bit different from your standard, I don't mean to say standard, but what you normally see in this type of offense. Well, Your Honor, I think that the four-year deduction or variance from the 10-year and half the 10 years I hasten to add because the guidelines were actually higher than that. Well, I think in this day and age when they're advisory, I don't think we can take any sentence as having represented a departure as such. It's what the court thought was appropriate. Exactly, but I think that, and if you look at cases like Rita, where the Supreme Court has said, for example, where I believe that there was really nothing in the transcript to indicate whether the defendant's physical condition was considered, which was a big topic at issue in that sentencing where there was testimony and so forth. What is there to suggest to us that he considered here? He said the right things to let us know that he was aware of the reports. He listened to the two doctors who testified, but then the statements that he made in the course of giving this sentence, it's almost as though, well, I'll hear it, but I'll hear it with the blinders on because for this kind of an offense, I view it this way, and I give these offenders this kind of a sentence. And he talks about the potentially draconian punishment that your colleague Russell Way referred to, the fact that this is someone who he could also turn around again, become a predator, a pedophile monster. Where is this coming from? That's not what any of the, even taking aside any of the professional psychiatric testimony that was on the record, this guy is not, at least not yet, a pedophile monster, nor maybe by putting him in prison for six months, he may become a pedophile monster when he gets out, but he sure wasn't a pedophile monster when he went in. And it just seems like the judge has in his own mind, and yes, it's hard to fault him totally for this because the incredible victimization that goes on in these so-called victimless crimes, we lose sight of fact of what happens to these kids who are used in this manner. But to then sentence someone based upon that view of the offense without apparently giving any individualized consideration pursuant to 3553A, we have available to you a witness, and what he said in denying that witness was, there's one basic rule which is generally applied to expert witnesses in both civil and criminal context, which is one cannot be subpoenaed to give expert testimony. I read that and I was like, no, where's that coming from? What basic rule did he have in mind? Do you have any clue at all? Well, I believe, Your Honor, he was referring to the rule in the civil context, I believe it's 45, where experts who are not retained by a party cannot be subpoenaed. Well, he says it's basic in both civil and criminal context. It makes you think we're wasting a lot of our time when we have these dogwood cases to decide whether or not an expert's report can get any evidence because it doesn't make any sense. It seemed to me clearly he was laboring under a mistakable law, wasn't he? Even if he were, Your Honor, I would submit that harmless error is clearly applicable in this case, and that goes back to the question of what was before the court. And what was before the court, and I would go back again to what my opponent has said in her brief. In arguing that he did ignore, she said that Silverman's opinion, that was that Dahlhofsky had a, quote, uniquely high prognosis for rehabilitation, and then says in her opening brief at 15 and 16, all three psychologists who evaluated Nick confirmed these facts. This evidence was virtually undisputed. But there was no evidence by the other two psychiatrists as to what regimen he should be under prospectively. Well, Your Honor. I.e., he should not be imprisoned, this would be horrible, he should be treated, et cetera, et cetera. Counsel asked both of the live witnesses who she retained or who the defense retained whether they agreed with Dr. Dahlhofsky's, excuse me, Dr. Silverman's prognosis and his report. And they said yes, unequivocally. And the government put on another witness, an expert who did not examine the defendant, and he had a somewhat different view. But, again, and going back to Judge McKee's point, there was a lot of testimony from the experts in this albeit short hearing. So it's certainly much more fleshed out in the written submissions that the court in the record acknowledged that he had read. And that whether this viewing and the crime at hand, which was, and the facts being undisputed, that there was a large amount of child pornography, including of prepubescence and so forth, but no evidence that this, as Your Honor noted, that Dahlhofsky had ever actually acted on a live person personally. But isn't there a difference between someone who has examined someone and someone who has treated someone? I mean, in the social security context, you know, given the opinion of the treating physician as to what is going on with someone's mental or physical ability, somehow that, it matters more than someone who has had the person for an hour and looked at someone else's records. I think it's just tough. How can we say as a matter of law that leaving out the testimony of a treating physician is harmless error? Well, Your Honor, because I submit that all of what he would have said in substance was before the court. In that letter, it was very powerful, and I think certainly to come to the court, to have a document before the court saying I've been doing this for 15 years and I've never written a letter on behalf of a defendant and this guy shouldn't go to jail. And the other question is, did the judge pay any attention to that? And as I'm sitting here, it is Judge Rendell mentioned the social security case, and maybe this is the case to do it, but why shouldn't we require when you have all the testimony pointing to a certain conclusion, and then the judge imposes a pursuant to a sentence, pursuant to fears that he might be dealing with a pedophilic monster. Well, there's nothing to suggest that. Why shouldn't we at least require that a sentencing judge explain why he or she has, this is not a contested ballot of experts, explain why the judge rejected the Silverman's report and the testimony of the other two, Dr. Harborne and the other doctor. It seems to me if you have to explain that if you're an ALJ, administrative law judge, you should explain why someone's not getting social security benefits. Why shouldn't you have to explain that to justify putting somebody in prison for six years? Just explain why he rejected. Maybe he's got a good reason for hearing Silverman's report, hearing Harborne's testimony, hearing the other doctor's testimony and disregarding it. He saw the DVD he refers to, I'm assuming that was a compilation of the files that were downloaded. Maybe there's something that was in his mind that we should know about that would justify rejecting all of those expert testimonies saying a sentence that would otherwise be appropriate is not appropriate for this particular case. Why shouldn't we require that kind of analysis as part of the Booker reasonableness review or give some flesh to what the Supreme Court said in Booker and Rita and Gall? Why shouldn't we require that? My time has expired. May I respond?  They tell me I have to ask. Your Honor, I think this goes back to Rita. Your Honor mentioned Rita and Rita is on all fours exactly with this point, which is in that case there was significant testimony with regard to the physical condition of the defendant and whether I believe if memory serves it was one of the conditions at issue here, which was vulnerability in prison. And if I may quote briefly, the record makes clear that the sentencing judge listened to each argument. The judge considered the supporting evidence. The judge was fully aware of the defendant's various physical ailments and imposed a sentence that takes them into account. Now this, Your Honor, I note that I believe in this case there was really no mention, but the court did vary if I'm not mistaken. I go back to the text. The judge understood that Rita had previously worked in the immigration service where he'd been involved in detecting criminal offenses and he considered Rita's lengthy military service, et cetera. The judge then simply found these circumstances insufficient to warrant a sentence lower than the guidelines range of 33 or 45 months. I stand corrected. It was not even a variance. In this case you have one. He said that this range was not inappropriate. I skipped a parenthetical. He immediately added that he found that the 33-month sentence at the bottom of the guidelines range was, quote-unquote, appropriate. He must have believed there was not much more to say. And, Your Honor, in the sentencing context, as distinguished from a Social Security case where you have, I think, a duty certainly as in sentencing to flesh out the record, the substance of what Dr. Silverman would have said in person was before the court and under Rita and the Supreme Court's precedent. My question is, should we require some explanation as to why the judge thought it was appropriate to reject all of that testimony? It was all before the court, but apparently he didn't pay any attention other than to say to an 18-year-old kid with a little poor record, I'm not going to max you out here. I'm going to cut you a break and give you six years. I don't believe the court can presume that he rejected the testimony because the record simply doesn't reflect it, and I think under Rita you have to assume that he did take that into account as mitigating circumstance because he did very downward substantially. Thank you. Thank you. I just want to address the issue of the contract and whether or not the court's ruling with respect to subpoenaing Dr. Silverman was an error as a matter of law. I think that when you look at the record, it very clearly doesn't, the court does not reference any statute, any case law, any thing to support the notion that an expert can't be subpoenaed to provide expert testimony. I assume that might be an error of law, but if it is, it's a harmless error because the report was in front of the judge. He read the report and considered it. No, and again, I think that the point that I would go back to is that Dr. Silverman's testimony, that the letter itself, that there were gaps in the letter that we would have wanted to fill in for the court in the testimony, that Dr. Silverman, as the treating physician, was in a unique position to address the mitigating issues and, as I said before, explain for the judge in a way that the doctors who did provide reports and testify could not, why are you comfortable with the relationship that you have with Mr. Olofsky in stating to this court that no jail time is the appropriate result in this case and in light of this kind of case, in light of the fact that you are a doctor who's trained specifically to treat sex offenders, who has a lot of experience doing that, why under these circumstances are you satisfied and would you recommend to the court that no imprisonment be imposed? And so I think that there is still a gaping hole in the evidence that was presented to the court. Where was Dr. Silverman's letter presented to the court? We have Dr. Witts and Dr. Pilgrim's. But I don't know that it... I've got the record citation. Excuse me for one minute. I've got it here. All right. Yeah, here we've got it. Dr. Silverman's letter is at page 25 through 27 of the appendix. But I mean where either the transcript at the very back of the appendix was the letter actually presented to the court? The letter was provided to the court by a pretrial. It's my understanding the record is actually unclear anywhere whether or not the court in fact considered the letter before imposing a sentence. Was it part of the TSR? No. At the hearing on November 16th prior to that because the letter had been penned before that, that when pretrial presented the issue to the court about Dr. Silverman testifying, the letter was provided. So we don't know that the court actually had it right there then at sentencing? Yes, and there's nothing in the sentencing record which suggests that the court did read it or did consider it. Although the other doctors said they agreed with him. Yes, correct. Unless the court has other questions. No, we have none. Thank you. I'd like to get a transcript after you're done. Maybe I need to separate the court choir to find out how this is done. I'd like to get a transcript of the argument. Maybe you could split the cost, if that's all right. We'll take a matter into advisement. Thank you very much.